UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**United States of America**,

   *Plaintiff*,

v.                     Case No. 3:17-cr-123
                        Judge Thomas M. Rose

**Joseph Edward Conner, Jr.**,

   *Defendant*.

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS. ECF 26.**

---

Pending before the Court is Defendant's Motion to Suppress. ECF 26.

**I. Background**

On September 15, 2016, the Dayton Police Department received an anonymous tip indicating suspected drug trafficking activities were occurring at 2826 McCall Street. (Tr. @ 9, 12-13, 25-28, 31-32, 49-50, 62, 81-82). This residence is located in a depressed section of West Dayton that has historically suffered from a high crime rate fueled by drug activity. (Tr. @ 8-10). At approximately 1:30 PM on said date, Officer Mark Orick initiated surveillance of the residence from an unmarked vehicle located approximately one half block away. (Tr. @ 8, 10-12, 23, 34, 62). Officers Jacob Rillo and Zachary O'Diam maintained a backup position in a marked police

cruiser parked approximately a half mile away. (Tr. @ 13-14, 64). Each of these police officers were then assigned to a counter-narcotics unit known as the Community Problem Response Team. (Tr. @ 22-23, 80). At approximately 2:00 PM, Officer Orick observed a bright yellow 2004 Dodge Neon automobile bearing Ohio license plate "816YQL" arrive and park in front of the residence. (Tr. @ 10-11, 19, 49, 67). He observed two males inside the Dodge Neon. (Tr. @ 11-12, 19, 67). A person later identified to be Defendant Joseph Edward Conner, Jr exited the passenger side of the Dodge Neon and entered the front door of the residence. (Tr. @ 15-17). Conner remained inside for between approximately 5-7 minutes while the white male driver, later identified to be Kenneth Grieshop, remained inside the Dodge Neon. (Tr. @ 15-17, 25, 63-64, 124-25, 135).

Conner soon exited the residence and re-entered the Dodge Neon. (Tr. @ 112, 126, 135). The Neon began heading eastbound on McCall Street. (Tr. @ 16, 127).

Officer Orick's opined that the observed behavior was consistent with other drug trafficking activities observed at other drug houses existing in the City of Dayton, although he did not exclude innocent explanations. (Tr. @ 6-7, 10, 16-17, 25). Officer Orick proceeded to follow the Dodge Neon as it departed the scene. (Tr. @ 14, 16-18, 20, 29- 4 30, 52-53, 63, 65, 100-101). He simultaneously advised Officers Rillo and O'Diam of the Neon's actions via an encrypted, non-recorded police radio channel. (Id.).

Soon Officer Orick observed the Neon fail to use a turn signal while making a right turn from Eleanor Ave. onto Germantown St. (Tr. @ 18, 49, 51-52, 64, 85-6). This traffic infraction violated Ohio Revised Code § 4511.39. (Tr. @ 18-19). Officer Orick requested that Rillo and O'Diam initiate a traffic stop of the Neon which they did near the intersection of Germantown St. and Derby Rd. (Tr. @ 20-21, 25, 51-52, 54, 65, 85). As the Neon rolled to a stop, Officers Rillo

and O'Diam observed Conner engage in what they describe as "furtive movements" towards the front passenger side floorboard. (Tr. @ 66-69, 88-89, 100). Officers Rillo and O'Diam approached the stopped Neon and removed both Conner and Grieshop from the vehicle. (Tr. @ 21, 54-55).

The arresting officers noticed that Conner was not wearing a seat belt. As Conner exited the subject vehicle, he held two cell phones. (Tr. @ 75, 133). Moreover, he had no identification documents. (Tr. @ 69-70, 107, 129, 136). Grieshop lacked a valid driver's license and also had an active warrant for a prior traffic violation. (Tr. @ 77, 79-80, 116, 129). The Neon was registered to a third party named Roberta Wells. (Tr. @ 21, 44, 68, 107). Pursuant to Dayton Police Department procedures, the Neon was impounded and an inventory search was conducted. (Tr. @ 70-73; GE #1). While searching the front passenger area where Conner had been seated, the officers found three additional cell phones laying on the front passenger seat where Conner had been. (Tr. @ 71).

After both occupants were secured, Officer Rillo more thoroughly searched the front passenger side floorboard area and discovered a fully loaded and chambered semi-automatic SCCY 9MM handgun bearing serial number 192286 adjacent to a clear sandwich baggie containing a large amount of a chunky white material that was suspected to be cocaine. (Tr. 75-76; GE # 4 & # 5).

Ten months later, on July 11, 2017, Dayton Police Detective Dustin J. Phillips, in his capacity as a task force officer assigned to the FBI's Dayton Safe Streets Task Force, swore out a criminal complaint against Defendant Joseph Edward Conner, Jr. (See Case No.3:17-mj-318). (Doc. # 1). U.S. Magistrate Judge Sharon L. Ovington issued an arrest warrant. (Doc. # 2). On July 12, 2017, Conner was taken into police custody. On August 8, 2017, a Federal Grand Jury

sitting in Dayton, Ohio returned a three-count indictment against the defendant. (Doc. # 18). Count 1 alleges felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), Count 2 alleges possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and Count 3 alleges possession with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On October 13, 2017, Conner filed a motion to suppress all evidence seized from the 2004 Dodge automobile. (Doc. # 26). On November 30 and December 11, 2017, this Court convened evidentiary hearings to consider the merits of the suppression motion. On February 21, 2018, the defense filed its post-hearing brief. (Doc. # 34). The Government responded with a post-hearing brief in opposition to said defense motion to suppress.

Defendant has also moved the Court to suppress the fruits of the search of his residence.

**II.    Analysis**

In order to effect a traffic stop, an officer must first possess probable cause to believe a traffic infraction has in-fact been committed. *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004). Failure to use a turn signal while making a right turn at an intersection is a violation of Ohio Revised Code § 4511.39. "[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle." United States v. Hill, 195 F.3d 258, 264 (6th Cir.1999). "Thus, even if [the officer] used the failure to signal as a pretext to initiate a traffic stop of an otherwise-suspicious vehicle, this fact does not undermine the probable cause that existed to make the stop if [Defendant] failed to signal his turn." *United States v. Miller*, 413 F. App'x 841, 843 (6th Cir. 2011).

This alone is sufficient to conclude the Court's analysis. As regards the Officer's decision to remove the occupants from the vehicle, just as a police officer may conduct a traffic stop based on information obtained by fellow officers, *United States v. Barnes*, 910 F.2d 1342, 1344 (6th Cir. 1990) (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985), responding officers are entitled to presume the accuracy of the information furnished to them by other law enforcement personnel. *United States v. Lyons*, 687 F.3d 754, 769 (6th Cir. 2012). They are also entitled to rely upon the investigating officer's representations of reasonable suspicion, and to that extent, to rely upon whatever applicable exigent circumstances are claimed to support a stop. *Id*. The "collective knowledge" or "fellow officer doctrine" recognizes that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *Hensley*, 469 U.S. at 231. The collective knowledge doctrine applies equally to traffic stops as well as vehicle searches. *United States v. Williams*, No. 11-1476, 2012 U.S. App. LEXIS 9997, 2012 WL 1700454, at *6 (6th Cir. May 15, 2012); *United States v. Perkins*, 994 F.2d 1184, 1189 (6th Cir. 1993)).

The doctrine applies in three separate inquiries: (1) the officer taking the action must act in objective reliance on the information received; (2) the officer providing the information must have facts supporting the level of suspicion required; and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it. *Lyons*, 687 F3d at 767 (citing United States v. Nafzger, 974 F.2d 906, 911 (7th Cir. 1992)).

An officer that has probable cause to believe that a traffic infraction has been committed may temporarily detain the motorist regardless of the officer's motivations or suspicions. *Whren v. United States*, 517 U.S. 806, 808, 812-13 (1996); *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008). "[P]olice officers [may] stop vehicles for any infraction, no matter how slight, even if

the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop." *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). "The Fourth Amendment forbids law enforcement officers from making unreasonable searches and seizures, 'and its protections extend to brief investigatory stops of . . . vehicles that fall short of traditional arrest.'" *United States v. Liqman*, 522 F.3d 613, 616 (6th Cir. 2008)(quoting *United States v. Arizu*, 534 U.S. 266, 273 (2002)).

In general, the Fourth Amendment does not require police to obtain a warrant to search an automobile when probable cause exists to believe it contains contraband or evidence of criminal activity. *California v. Carney*, 471 U.S. 386, 392-93 (1985). This so-called "automobile exception"—stems from both the inherent mobility of motor vehicles and the reduced expectation of privacy that result from their pervasive regulation. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1966). Even if a vehicle's mobility is temporarily restricted or potential drivers have been secured, warrantless searches are still legally valid. *United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007). The "automobile exception" applies even in non-exigent circumstances, and regardless whether the officer's decision to stop the vehicle may have been pre-textual. See *United States v. Cope,* 312 F.3d 757, 775 (6th Cir. 2002).

However, legal challenges to the validity of a search under the "automobile exception" are typically only considered when brought by the vehicle's owner, *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978), or by an operator with legitimate possession of the vehicle. *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005). If the police have probable cause to search a lawfully stopped vehicle for contraband, then the police also have probable cause to search the entire vehicle and all containers found therein in which the object of the search could reasonably be hidden. *United States v. Crotinger*, 928 F.2d 203, 205 (6th Cir. 1991) (citing *United States v. Ross*, 456 U.S. 798,

824 (1982).

The September 15, 2016 traffic stop of the Dodge Neon was legally authorized based upon the traffic infraction observed by Officer Orick As a mere passenger in the car, Conner lacks standing to challenge the subsequent inventory search performed on the legally impounded vehicle. Without a legal standing, an individual cannot assert Fourth Amendment rights connected with law enforcement searches.

## III. Conclusion

Because the traffic infraction justified issuing a citation and because the concerns of the surveilling officers justified extra concern on the part of the officer issuing the citation, Defendant's Motion to Suppress, ECF 26, is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio on Thursday, May 3, 2018.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE